Before we begin, for those of you in the audience today, I want to introduce the newest member of our court, who has been assigned by the Supreme Court, Justice R.C. Bollinger. We're happy to have him here. He's sitting in and he'll be sworn in September 29th of this year, and we will have added another justice to the court. He walked out and we all stood up for him. Well, practice. He ought to be sure of that, Mr. Dunham. Practice. Okay, the next case on our docket is In Re, the estate of Lula Margaret Bickett, deceased. And for the appellant, Mr. Dunham. May it please the court, counsel. What this case is really about is that in the estates of Edmund F. and Lula Margaret Bickett, there's about $20 million of farmland. There's other assets of a substantial amount, but that's essentially why so much time has been spent in attorney's fees and litigation costs. Edmund F. died in 2017 and his estate is still open. What I think is going on here is that, as we allege in our complaint, is that Lula Margaret and Edmund F. were estranged. Neither side, for whatever reasons, wanted to go through a divorce. And Margaret was given assurances that when Edmund died, if he pre-deceased her, and she was in better health than he was, that she would get half of his estate, and that's what his will did. His will did give her half. The problem that she had was, is that before he died, is that he put all of this real estate in some LLCs. Now, the family is divided. There is the, that part of the family that I'm not representing, they control that $20 million in real estate through these LLCs. Margaret got frustrated and disappointed when she found out that, as managers of the LLCs, she didn't get any distributions that in any way approached the fair market value of what that land was. And so she hired Mr. Wilson, who's alleged that he was noticed up in the complaint. And some negotiations took place of trying to get the other side to redo the LLCs for distributions that sought Margaret's favor, which he thought was reasonable. That never happened, and so finally Margaret, she executed a will and disinherited those, that side of the family, those siblings, those sons and daughters that are in control of the LLCs. Now, of course, the other side, the disinherited ones, they filed a motion, pleadings to contest the will. Their first set of pleadings were essentially undue influence. There was never any allegation that Margaret was not in control of her faculties. And those two attempts were made to bring that forward, and we filed a motion to dismiss, on the grounds that there wasn't any factual pleadings. It was just conclusionary allegations. And in August of 1923, two years after Margaret died, they filed a new second amended motion to set aside the will, on the grounds that there was a contracted inheritance plan. And the argument was made back in 2014 that Margaret had agreed that if she would get half of Edmund F.'s estate, that she would not file a will. Or I think she probably could have executed a will, but it would have required that all siblings be treated equally. And so now that litigation is still going. So we filed a lawsuit naming James Van Winkle as the attorney in the lawsuit, saying there's two things he did. One, he breached the standard of care back in 2014 when he didn't notify Margaret that she was entering into an oral contract and went to make a will, and then subsequently breached those duties when it became very apparent, particularly after Edmund F. died and there was these negotiations going on between Van Winkle and Robert Wilson, where Robert is basically saying, and eventually did, issued this will. At no point in time did Van Winkle ever say, you can't do that because your client is bound by this oral will. That's point number one. Point number two is, if you look, and I think it's kind of an important point. If you look at page A79 of the record, you'll see that the disinherited heirs about 90% of the way down, they admit in these negotiations that it was Margaret's will to change. She could change that. They admitted that. And so we think that what happened is that Van Winkle, they just contacted this, and it's essentially a fraud. I see a question coming. I have a question, Mr. Don. Yes. The case is here on a motion to dismiss that was granted without prejudice. That's correct. So the court found that this is premature. Do we have jurisdiction in this case? I had a hunch you were going to ask that question. That's kind of one of your favorite questions. It is. I think you've got subject matter jurisdiction. We briefed it, I would think. And it's not a motion to do that. It wasn't a motion to dismiss without prejudice because there was some kind of technical defect in our pleadings. In a sense, if she had, if the trial judge had dismissed with prejudice, that would have meant that our allegations about the attorney's fees that we had experienced, we didn't have a right to come back and ever get those, and, of course, then we could have appealed them. But as a practical matter, that ruling by the trial judge is, under the present set of circumstances as they exist right now, our lawsuit cannot go forward. And both sides have cited authority to indicate that even though the dismissal is without prejudice, that that still can be a final order. And we believe that it fits within that certain health. I don't think it can be a final order, but I do think that in paragraph D of the court's order, it says the court is dismissing this matter without prejudice, and the motion to stay is denied as moved. When you deny a motion to stay, that would give rise to our jurisdiction. What do you have to say about that? I agree with you 100 percent. Which actually gets into my point here. Why in the world can't we stay this litigation? Our major item of damage is going to be if we lose on their contracted inheritance plan, that will mean that Margaret was deprived of her opportunity to dispose of her interest and her half interest in the estate as she intended, which is we're talking about millions of dollars. And we don't know whether that's going to be the case until the so-called underlying litigation is determined. However, let's assume we win on that point. We're still, we believe, and that gets into the merits of the case, we believe that we still have incurred damages, and that is in terms of litigation costs and attorney's fees. Mr. Duggan, what is our standard of a review on a dismissal or a denial of the motion to stay? My understanding of the case law, Your Honor, is it is an abuse of discretion. But I think it clearly is an abuse of discretion in the sense that they started out and they said, if you look at the record, they don't have the cite to the A portion of the record, but it's entitled a motion to dismiss or stay. That's what they're asking for in the trial court. And then in the, and then we file pleadings and essentially, and in the oral arguments say, this is a case that is appropriate for there to be a stay. One of the things that's concerning to us is that if we, if you don't stay it, they argue that it is premature. But there's nowhere in their brief, nowhere in their oral argument are they saying that, okay, if it turns out that our construction of the law is correct and it's not premature, they're making no commitments at all that if this case comes back and we get to file a new lawsuit, that they're not going to argue statute of limitations for all the costs and expense that we've incurred. And so they're essentially wanting to have it both ways. I can have nightmares about the idea that three years from now, whenever it is, we go ahead and then file our lawsuit against Van Winkle because you issue an order saying that's the way we have to proceed. And then they take the very brief that I'm arguing now, throw it back into my face, and say under Zwig and all these other cases, the statute of limitations is run as to all of these litigation costs. And maybe even argue under Zwig that the statute of limitations is run even under the contracted inheritance plan. The whole suit has been untimely filed. And so that's why we had no choice. We had, I believe, we had under this court's ruling, we had to take an appeal. Otherwise, we were at grave risk. I think it would have been malpractice on our part. We had to take an appeal so as to preserve that aspect of our claim against Van Winkle. The trial court's order is very terse. But it ignores our argument that under count two, we're alleging fraud against Van Winkle. In all of the cases, even in the trial court and even in the appellate court, they've just essentially said, they're making a race you to caught argument. They're saying, well, it's the same property facts as the negligence claim, as the fraud claim. And so therefore, the law as to the statute of limitations and the law as to the elements for negligence, as opposed to fraud, is the same and the same analysis should apply. They don't cite any cases for that. I would agree, if there was a final judgment that was entered on the negligence claim, that the fraud claim would be race you to caught and we would be foreclosed from bringing that again. Well, I've cited my brief. In the case of fraud cases, incurring attorney's fees is an element of damages. I cite that in the Forrester v. State Bank of Moline case. It's a separate cause of action. It's a separate item of damages. It's a separate cause of action. And there's no case indicating that I could find where an attorney has been sued for fraud, as the Supreme Court in Cripes has said, you can do that. There's no case that says that you have to wait until some kind of underlying litigation that may in some way pertain to the fraud has to be resolved or settled. You can go ahead and sue the attorney for fraud if, in fact, your complaint does allege a cause of action for fraud, and they did not in the trial court. They did not attack count two nor count one and say you have not alleged the elements of fraud. You have not alleged the elements of negligence. What you have done is that because there is this underlying litigation, there's no way that you're ever going to have any damages. The yellow light is starting to blink. I do think, as I tried to make clear in the reply brief, there's two types of attorney negligence cases that are out there. One pertains to litigation, where attorney lets the statute of limitations run. Attorney does not call a witness, or attorney does not develop the case. So the client fires the attorney, hires another attorney, and says my first attorney was negligence. And those types of cases, yes, the statute, you have to wait for the underlying litigation, because the reason for that is because the plaintiff will have to incur attorney's fees anyway. This is a transaction case. It's a different type of case. And it's a case where there's a rib, and that line of cases applies. Okay. No questions. Thank you, Your Honor. Mr. Dunn, you'll have a few moments, minutes after we hear from the appellee. Thank you, Your Honor. Good morning. Good places to court. My name is James Brodzick on behalf of Appellee James Van Winkle. The facts, and Mr. Dunn was right, the facts of this suit are somewhat convoluted in that they're so intertwined with the will contest currently pending, also before Judge Morgan down in Gallatin County. My client, Mr. Van Winkle, was hired in 2012 by Edmund and Lula to create an estate plan. Mr. Bickett passed away, and in 2017, Mr. Van Winkle continued working with Ms. Bickett, creating power of attorney, various assignments, a living will. But that relationship soured, and she terminated Mr. Van Winkle in 2018. In 2020, with new counsel, Ms. Bickett executed a will disinheriting a number of her children, which you've heard. And after she passed away, a will contest was filed in September of 2021. It wasn't, my understanding is that until 2023 in an amended complaint, an allegation was made that Mr. Van Winkle had an opinion that there was an oral agreement between Edmund and Lula Bickett to have Lula not create a will after his death. And that is what necessitated the malpractice suit, an opinion. That's all we currently have, an opinion by a former lawyer that there was an oral contract. And we moved to dismiss and argued, amongst other things, that as the will contest is currently pending, there's no breach of duty, there's no damage, there's no injury. All there is is an opinion that there was an oral contract. And as Mr. Dunham discussed, in the estate's response to our motion to dismiss, they acknowledged that the incident case is not ripe for trial until a judgment has been entered regarding the underlying will contest. This is a provisional or prophylactic malpractice case, and multiple courts around Illinois have found that those are improperly filed. You did file a motion to dismiss or stay. Correct. That's on C-34 in the record. Correct. What is your objection to a stay? So the reason we filed a motion to dismiss or stay was, in our opinion, there is no cause of action. They haven't met the elements of a malpractice case. However, if the courts, for some reason, found that they had met the elements, the matter should be stayed until the will contest had been determined. Well, your motion to dismiss was filed under 2-615, which means you're saying that there's never going to be an opportunity for them to plead a cause of action against your client. And we don't believe that there is. But do you have to go into the details of the underlying lawsuit is what the judge ruled? Right. So what do you say about the statute of limitations, then, if we have to wait three or four years for the underlying limitation? Right. So my belief is that if the court argued that there's no pending action and that this case cannot be currently brought, I'm not sure how a statute of limitations can be running on a suit that's not ripe to be brought. It says it's premature. It doesn't really rule on the merits of your motion. That the lawsuit is premature? I agree that the lawsuit is premature. But the trial court didn't rule on your 615 motion is what I'm saying. Correct. It just said this case is premature, and then it denied the motion to stay. Correct. So my question to you is the same as Mr. Dunham. If it's just a matter of prematurity, what happens with the statute of limitations? Because they've already filed it once. Yeah, I'm not sure I can argue with a straight face that a matter is premature and also a statute of limitations is running on it at the same time. I'm not sure after... But if you file and you don't refile within a year, what happens? You can have the case dismissed. But our argument is that until a finding that an oral contract even exists in the underlying case, this matter can't be ripe to be brought. But it has been. It has been. And then the trial court dismissed it based on an agreement that it was premature to be brought. They dismissed it without prejudice. Correct. Which usually means there can be an amended pleading or refiling. Correct. And part of the... But on the refiling with this situation, would that be a year statute of limitations? Well, I think part of the issue is that, and which I'll get into in the case law later, is that the only damage that currently seems to be alleged is the attorney's fees that are being expensed to the estate in the will contest case. And there's case law that says simply hiring an attorney, this is the suburban real estate, the Supreme Court case, merely hiring new counsel to defend a lawsuit challenging the attorney's legal advice and incurring fees does not standing alone trigger a cause of action for malpractice. By providing legal representation, an attorney is not guaranteeing the client he or she represents that the client will never be sued or bring to indemnify the client if it is sued. And this goes back to the prophylactic nature of the malpractice case itself. This is from the Lucy case, a first district case. Sound policy reasons exist in opposition to a rule which would require a client to file a provisional malpractice case against his attorney whenever an attorney's legal advice has been challenged. Among them are judicial economy and the preservation of the attorney-client relationship. So I think what we argue here is that this is a classic state of a prophylactic malpractice case being filed. You know, we don't believe there's a breach. There's no duty. In Supreme Court, again, without actual damages, there can be no claim. And attorney's fees alone are not actual damages. You know, a part of this, too, and I think Judge Morgan agreed, that it's unclear to us why a mere opinion of a former counsel would give rise to a legal malpractice claim. Suburban real estate, again, an instant case cannot be right for trial until a judgment has been entered regarding the underlying will contest. Hiring new counsel and incurring related legal fees about more does not cause a malpractice claim to vest. There was also a discussion of the fraud claim. Are you saying that when counsel gives an opinion, it cannot give rise to a malpractice lawsuit? The only opinion, I'm not saying that that's a bright-line rule. I'm saying that currently, as played in the will contest case, that counsel had, that there's an allegation, which has not been litigated yet, that a former counsel had an opinion that Lula entered into an oral contract not to create a will. If Lula relied on that for her detriment, there could be a malpractice suit. Well, I think the allegation is brought in the malpractice claim. The argument is that after Lula fired Mr. Van Winkle and hired counsel, some two years later and agreed that she was going to create a will, Mr. Van Winkle had a duty to, I guess, reach out to her and inform her that there was an oral contract not to create a will that she herself was a party of. If there was an oral contract not to create a will, she herself was a party to that contract, and she would know that she was, I guess, breaching the contract. I'm not sure. We've done no discovery. I'm not sure exactly what would come out. But right now, it's just an opinion that two years following the firing of Mr. Van Winkle, she agreed to or she decided that she was going to prepare a will. Mr. Dunham also touched briefly on the fiduciary fraud claim. In a Pippin v. Pedersen case, that's a First District case. In that case, the First District acknowledged that claims for legal malpractice and claims for breach of fiduciary duty are different claims involving different elements and defenses. However, when claims are based on the same operative facts and alleging the same injury, which they are in this case, they're duplicative and it's not a law. What do you mean it's not a law? I mean, they're duplicative. Mr. Dunham argued that the court did not address the fraud claim in the motion or in the dismissal order. However, our argument is that as it's duplicative, it would also be untimely.  Premature. Correct. Is there an allegation that Mr. Van Winkle advised Ms. Vickett that he thought she'd entered into an oral contract? Or was that part of the discovery when Mr. Wilson sent an inquiry to Mr. Van Winkle for all your paperwork? Is that when that? Yeah, I think that's, it's difficult for me to ascertain what they're actually alleging. I'm not sure how an oral contract could be made if a party isn't assenting to the oral contract. It would be a one-sided contract. Both parties obviously have to assent for a contract to be formed. So I'm not sure how, if the parties don't believe an oral contract is formed. It's like a cat chasing its own tail in a way. Either there was an oral contract form that Lula was aware of, and she breached it by creating a will two years after she had fired Mr. Van Winkle, or there was no oral contract made. And at that point, you know, the facts are, at this point, without learning anything more by just on a pleading stage, it's difficult to kind of understand exactly how the rationing that either this oral contract was made or not made. But the parties are in agreement that until the will contest is decided, that this case cannot move forward under any of the theories that are currently before the court. So how does your client prejudice the matter of state? Well, that's interesting because my client has apparently been called as a witness in the will contest. And that would be, and part of that, part of this provisional malpractice claim argument is the fact that when lawsuits are filed against attorneys, while other pending litigation involving their actions is undergoing, that it can impact the way testimony is given. It can impact inconsistent verdicts, inconsistent stands as to, you know, different positions and suits. And so there's policy reasons that those types of cases are frowned upon, and not allowed. Do you have any support for that? Because there are cases that are state all the time. Yeah, well, as far as the Prophylactic case, the Lucy case, which I previously cited too, sound policy reasons exist in opposition to a rule that require a client to file a provisional malpractice claim against his attorney whenever the attorney's legal advice has been challenged. The Stay case? The Lucy case? Yes. I believe Lucy was dismissed. With prejudice? That I'd have to go back and look. I can't recall off the top of my head. Is that case referenced in your brief? It is. And for third personnel services, public policy precludes provisional malpractice claims from proceeding simultaneously with underlying claims. Was that a dismissal? I believe so, yeah. And in Warnock, unless a client can demonstrate he sustained a monetary loss, not the cost of hiring new counsel, but actual damages caused by a lawyer's negligent act, no clause of legal malpractice has been accrued. And at this time, the only allegation of a damage is the hiring of new counsel. The Lucy case was a dismissal of a legal malpractice suit as premature, but the state of William Bass was an okay to issue a stay. So we have conflicting case law. Correct. On this issue. Correct. Do you agree with that? There is some conflicting case law, but I think you have to look at the facts of each individual case. Always. Right. Wrapping up, in regards to the stay, the argument that Mr. Dunham believes the statute of limitations will continue to run on damage items in terms of litigation costs, but plaintiffs, in their response brief, acknowledge that there's no legal determination that Mr. Van Winkle breached the standard of care or caused the estate any damages. There are no damages at this point, and no claim has accrued. There is nothing to say. I'll wrap up there. Thank you very much. All right. Thank you for your arguments. Mr. Dunham, you both have replied. I'm going to have to talk fast because time is limited. We've got several points. Okay. One of the distinguishing things about the Bass case, where they did say the stay was appropriate, is that there was opposition to the stay in the Bass case. In this case, both sides wanted the stay. So my point is he has not responded. Why it is that he's changed his mind. If you look at the question about can an opinion lead to malpractice, if you look at A3 of the appendix, that's the allegation in our complaint, and it's obvious what happened was because Van Winkle offered this opinion, that's why the disinherited heirs brought their second amended petition. It's all predicated on Van Winkle's testimony, which he gave to the other side. Even though he's no longer representing Margaret, he still owes duties under the rules of professional responsibility to Margaret. Kippen is not a statute of limitations case. There's no case out there that says you have a different statute of limitations for fraud as opposed to malpractice. Well, they say there was either a contract or there wasn't. Well, if there wasn't a contract, then we believe that Van Winkle is committing fraud because he's telling everybody that there was. If there was a contract, then think about this. Van Winkle is Margaret's lawyer, and he's not telling her. Now, you've got to be careful about what you say here because somewhere down the road, you might get sued for violations of an oral contract not to make a will, which begs the question. Look at all of the documents that Van Winkle drafted, and they're attached to the complaint. Why don't we have a contract not to make a will amongst the numerous documents that he asked Margaret to sign? Finishing up, he cites this suburban case, and it's interesting because I've got the same case flagged in my notes here. Page 16, middle of the page. Quote, merely hiring new counsel to defend against a lawsuit challenging the attorney's legal advice and incurring legal fees does not stand alone, trigger a cause of action for malpractice. That's true. But note what happens. Note the caveat. To defend against a lawsuit. That's the prophylactic case that he keeps talking about. But every time you sue for malpractice doesn't mean that the statute of limitations has been solved. This is a transaction case. Margaret never hired Van Winkle to defend him or her or the estate in this contract to make a will. This is a transaction case. There's plenty of cases out there. Please take a look at the Zwig case where the statute of limitations. In the Zwig case, that poor plaintiff wound up waiting, following the advice of an affilee, to bring his lawsuit, and guess what happened? He lost $2 million because he said the statute of limitations had run. And this is not that case. Van Winkle is not being sued for the way he represented Margaret in some lawsuit. He's being sued for his breach of duty and the way he represented her. Thank you. Thank you, Mr. Dunn, and thank you. This matter will be taken under advisement. We will issue an order in due course. Thank you.